# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SIDNEY PERRY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CASE NO.: 3:09-cv-239-GPM-DGW |
| vs. | ) |
| | ) |
| TINA MONROE, C. BRADLEY, | ) |
| CORRECTIONAL OFFICER MOORE, | ) |
| LT. DILDAY, and 7-3 UNKNOWN SGT., | ) |
| | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATIONS

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by United States District Judge G. Patrick Murphy pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a) for a Report and Recommendation on the issue of whether Plaintiff, an inmate in state custody, exhausted his administrative remedies prior to filing this lawsuit as required by 42 U.S.C. § 1997e(a). It is **RECOMMENDED** that the Court **FIND** that Plaintiff failed to exhaust his administrative remedies prior to filing suit, that the Motion for Summary Judgment filed by Defendants Bradley, Dilday, Monroe, and Moore (Doc. 59) be **GRANTED**, that these defendants be **DISMISSED** from the action, and that the Court adopt the following findings of fact and conclusions of law.

### FINDINGS OF FACT

Plaintiff filed his complaint in the action on March 27, 2009 (Doc. 1), alleging that defendants used unconstitutional excessive force against him in a beating that occurred on January 14, 2009, at Menard Correctional Center. In its threshold review of the amended complaint (Doc. 7), the District Court found that Plaintiff had stated a claim against Defendants

Monroe, Bradley, Moore, Dilday, and an unknown sergeant for unconstitutional use of excessive force in violation of the Eighth Amendment (Doc. 10). Defendant Sauerwein was dismissed from the action. In answering the amended complaint, Defendants Monroe, Bradley, Moore, and Dilday raised the affirmative defense that Plaintiff failed to exhaust his administrative remedies (Doc. 31).

On July 13, 2010, Plaintiff filed with the Court a supplement to the complaint which included exhibits Plaintiff believed would support his assertion that he exhausted his administrative remedies. Among the exhibits were two grievances—dated January 14 and January 16, 2009—both of which grieve the incidents described in the complaint (Doc. 35). Neither grievance contains an institutional response. The grievance dated January 14, 2009, states that on that date inmate Perry was in the office of M. Sauerwein, a mental health technician, for a routine monthly evaluation. Suddenly Defendants Tina Monroe, C/O Bradley, C. Moore, and Lt. Dilday stormed into the office. C. Bradley stated that he "felt like kicking some nigger ass today." The officers pulled Plaintiff out of his chair by his arms and "smashed [his] face into the floor." The officers proceeded to kick Plaintiff in his head, shoulders, back, legs, and face, while cuffing his hands behind his back. The Defendants smashed the then-handcuffed Plaintiff into the wall, causing his nose to bleed. Defendants repeatedly kicked, punched, and threw Plaintiff into walls while using racial epithets. The beating continued as Defendants escorted Plaintiff to segregation. They removed his coat, shirt, shoes, and socks, and left him in a cell for two to three days with no running water and no toilet. He was not seen by medical staff for his injuries for two to three days (Doc. 35, pp. 4-5).

The second grievance, dated January 16, 2009, included a less-detailed but similar recitation of events regarding the beating and placement in segregation without adequate

clothing. Plaintiff stated that he did not receive medical care for three to four days (Doc. 35, pp. 2-3).

*Defendants' Motion for Summary Judgment*

On October 21, 2010, Defendants filed the pending Motion for Summary Judgment (Doc. 59) arguing Plaintiff failed to exhaust his administrative remedies prior to filing suit. Defendants argued that Plaintiff did not produce any grievances that he submitted to a counselor or grievance officer; he produced only grievances that contained no institutional responses. In Plaintiff's responses to Defendants' interrogatories, Plaintiff did not indicate that he filed any grievances with a counselor or grievance officer. Instead, he claims to have mailed grievances and letters to three wardens, the Director of the IDOC, and to the Fourth District Deputy Director, but received no response, and all copies were stolen from his property box (Doc. 59-5, Exh. D). Plaintiff mailed two grievances dated February 2, 2009, directly to the Administrative Review Board ("ARB"), but they were returned to Plaintiff unreviewed with instructions to follow the grievance process before filing with the ARB. Thereafter, no properly exhausted grievances were ever submitted to the ARB by the Plaintiff regarding the January 14, 2009, incident.

With its motion for summary judgment, Defendants provided the Plaintiff's Responses to the Defendants' Requests for Production, which included the following relevant documents:

1. Plaintiff produced a statement, entitled "Proof of Exhaustion," in which Plaintiff stated that he wrote numerous grievances to various IDOC officials regarding the incident, but received no responses (Doc. 59-3, p. 3).
2. Plaintiff produced a copy of a grievance dated January 16, 2009, written by Plaintiff, but not stamped received by a counselor or marked as an emergency grievance (Doc. 59-3,

3

pp. 4-5). This grievance is identical to the January 16, 2009, grievance submitted by Plaintiff to the Court on July 13, 2010 (Doc. 35).

3. Plaintiff produced a copy of an Adjustment Committee Summary Report, demonstrating that on January 20, 2009, Plaintiff was found guilty of insolence and disobeying a direct order on January 14, 2009. The report indicates that on that date, Plaintiff became argumentative with Psych Administrator M. Sauerwein, and yelled at her. He was ordered to stop, but he continued to yell. He was then handcuffed and escorted to segregation. He was disciplined with three months demotion to "C" grade, three months in segregation, and three months of disciplinary restriction (Doc. 59-3, p. 6).

4. Plaintiff answered Defendants' Interrogatories asking about Plaintiff's attempts to exhaust his administrative remedies. Plaintiff responded to each interrogatory by stating that he wrote a total of 25 grievances and letters to the wardens at Menard, and the IDOC Director in Springfield. He answered that he received no responses to any of the grievances or letters because they were stolen, along with other personal property, by Defendants Monroe and Dilday, and Judy Moore (Doc. 59-5, pp. 1-2).

5. Defendants produced the affidavit of Brian Fairchild, the Chairperson of the Administrative Review Board. Fairchild averred that he searched the records of the ARB and found that Plaintiff mailed two grievance forms and a letter, all dated February 2, 2009, directly to the ARB, which received them on February 9, 2009. Neither of the two grievances received by the ARB contained a response from a counselor, a response from a Grievance Officer, or a response from the Chief Administrative Officer, as required under the Illinois regulations. The ARB refused to address the grievances and returned them to Plaintiff informing him that responses from a counselor, Grievance Officer, and

Chief Administrative Officer are required to appeal a grievance to the ARB. ARB records show that Plaintiff never refiled the grievance with the required responses. The ARB has no other records of grievances filed by Plaintiff regarding the assault. Based on this evidence, Brian Fairchild concluded that Plaintiff did not exhaust his administrative remedies for his complaints about the January 2009 assault (Doc. 59-6, pp. 1-4, ¶¶ 9-13, 15).

*Pavey Hearing*

In light of the Seventh Circuit's opinion in *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), the undersigned held a hearing in the matter on January 4, 2011, to determine whether Plaintiff had properly exhausted his administrative remedies.

At the hearing, Defendants produced two witnesses: Jeannette Cowan and Barbara Mueller. Ms. Cowan testified that as Menard's Grievance Officer, she receives and logs grievances submitted by inmates. Grievances marked emergency and grievances filed on disciplinary tickets go directly to her. Non-emergency, non-ticket-based grievances are first answered by unit-level correctional counselors. An inmate may appeal a counselor's determination by submitting the grievance to the Grievance Officer. Grievances submitted outside of the time-frame set forth in the regulations or grievances involving issues at other institutions are returned to the inmates without being logged. Ms. Cowan reviewed her logs from January, February, and March 2009, and found no grievances and no emergency grievances submitted by Plaintiff Sidney Perry to the Grievance Officer. Ms. Cowan reviewed the grievance dated January 16, 2009, and submitted by Plaintiff, and noted it was marked as an emergency, but that the grievance was not file-stamped as received. As such, she opined that the Plaintiff's grievance was never received in her office (Doc. 72, pp. 9-15; Hrg. Trans. pp. 8-14).

5

Barbara Mueller, a Correctional Counselor at Menard, testified that she received a grievance from Plaintiff on January 23, 2009. She recorded the grievance in the inmate cumulative counseling summary, a computer database in which prison staff makes notes regarding each prisoner. She recorded his claims as, "Staff took his ID card when he was taken to seg, was prohibited from packing his own property when he came to seg, and that he has commissary missing, claims that he was physically attacked by staff prior to coming to seg." In the cumulative counseling summary she recorded her response as, "[S]eg property officer states that inmate received the property that he was allowed in seg, other property not allowed was placed in storage. I cannot verify the inmate actually had all these items immediately before coming to seg. A new ID was requested. IA was notified, as well as medical and mental health staff." Ms. Mueller concluded based on that note that she received a grievance from Plaintiff and responded to it. Ms. Mueller testified that she did not and would not have kept a copy of a grievance filed by Plaintiff after she had answered it. She returned it to the Plaintiff through institutional mail. She also indicated that it was not IDOC policy to keep copies of grievances answered at the counselor level. Ms. Mueller testified that at the time she gave Plaintiff the grievance, she saw no evidence that Plaintiff was injured (Hrg. Trans. Pp. 34-45).

Plaintiff Sidney Perry testified at the hearing that he filed a grievance on January 16, 2009. He testified that he received help from another inmate in preparing the grievance because he has difficulty reading and writing. He testified that the facts described in the grievance were his words, however. He testified that he marked the grievance as an "emergency" and mailed it to the wardens at Menard. When he received no answers, he wrote to the counselor. Plaintiff testified that Barbara Mueller was not his counselor at the time. His counselor was Ms. Goforth, another counselor on the seven gallery. Plaintiff testified that his counselor, Linda Goforth, did

not respond to his grievance even though he asked her about it 20 to 30 times. Plaintiff testified that he never received an institutional response of any kind to his grievance, although he testified that in the past he received responses to other grievances he filed (Hrg. Trans. Pp. 46-50).

In response to questions from the Court, Plaintiff testified that he recalled speaking to Barb Mueller on January 15, 2009, the day after the incident described in the complaint. He testified that she gave him the grievance form to fill out. In response to questions from the Court, Plaintiff testified that his injuries would have been visible to Ms. Mueller on January 15, 2009 (Hrg. Trans. 49-52).

After introduction of the evidence, Defendants argued that the evidence presented at the hearing, in addition to the affidavit off Brian Fairchild, Chairman of the Administrative Review Board, demonstrate that Plaintiff did not exhaust his administrative remedies about the January 2009 assault before filing this lawsuit.

In response, Plaintiff argued that the Court should deem Plaintiff's grievances exhausted because Plaintiff did all that he could do to have his complaints heard in a grievance, but he never received a response. As such, he has exhausted the administrative remedies afforded to him at Menard.

### CONCLUSIONS OF LAW

The Prison Litigation Reform Act ("PLRA") provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion of available administrative remedies is a precondition to suit. *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004). *See also Perez v. Wis. Dept. of Corr.*, 182 F.3d 532, 534-535 (7th Cir. 1999) (stating that §1997e(a) of the PLRA "makes exhaustion a

7

precondition to bringing suit" under § 1983). Failure to exhaust administrative remedies is an affirmative defense; defendants bear the burden of proving a failure to exhaust. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Dole v. Chandler*, 483 F.3d 804, 809 (7th Cir. 2006). The Illinois Administrative Code sets out the procedure for the filing of grievances by inmates. An inmate must first attempt to resolve the complaint informally. If the complaint is not resolved, the inmate may file a grievance within 60 days after the discovery of the incident, occurrence, or problem that gives rise to the grievance. 20 Ill. Admin. Code § 504.810. The grievance officer is required to advise the Chief Administrative Officer ("CAO") at the facility in writing of the findings on the grievance. The CAO shall advise the inmate of the decision on the grievance within two months of it having been filed. 20 Ill. Admin. Code § 504.830. An inmate may appeal the decision of the CAO in writing within 30 days. 20 Ill. Admin. Code § 504.850. *See also Dole v. Chandler*, 438 F.3d 804, 806-07 (7th Cir. 2006). An inmate may request that a grievance be handled as an emergency by forwarding it directly to the CAO. If the CAO determines there exists a substantial risk of imminent personal injury or other serious or irreparable harm, the grievance shall be handled on an emergency basis, which allows for expedited processing of the grievance by responding directly to the offender indicating what action shall be taken. 20 Ill. Admin. Code §504.840. Inmates may file grievances directly with the ARB on issues that pertain to a facility other than the facility where the offender is currently assigned. 20 Ill. Admin. Code §514.870(a)(4).

*Availability of Administrative Remedies*

An inmate is required to exhaust only those administrative remedies available to him. *See* 42 U.S.C. § 1997e(a). The Seventh Circuit has held that administrative remedies become "unavailable" when prison officials fail to respond to inmate grievances. *Lewis v. Washington*,

300 F.3d 829, 833 (7th Cir. 2002). The availability of a remedy does not depend on the rules and regulations as they appear on paper, but on "whether the paper process was in reality open for the prisoner to pursue." *Wilder v. Sutton*, 310 Fed.Appx. 10, 13 (7th Cir. 2009). If further remedies are unavailable to the prisoner, he is deemed to have exhausted. *Id.* Prisoners are required only to provide notice to "responsible persons" about the complained-of conditions. *See Wilder*, 310 Fed.Appx. at 15 (citing *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)). An inmate forfeits the grievance process, however, when he causes the unavailability of a remedy by not filing or appealing a grievance. *See Kaba*, 458 F.3d at 684.

*Discussion*

Plaintiff submitted two grievances to the Court—both unreviewed by a counselor, grievance officer, or warden—which describe in detail the assault alleged in the amended complaint. The Menard Grievance Officer never received these grievances in January, February, or March 2009, as either an emergency grievance or regular grievance. As evidence, the two grievances are unreliable. The first, dated the same day as the alleged assault, states that Plaintiff did not receive any medical care for two or three days after the assault, casting doubt upon its having been written the day of the incident and thus undermining its evidentiary value. The second grievance, dated two days after the alleged assault, indicates that Plaintiff did not receive medical care for three or four days after the assault, again demonstrating inconsistency regarding the date upon which it was alleged to have been composed. Accordingly, the Court finds that these grievances could have been written at any time, even after the commencement of this lawsuit. In answers to interrogatories, Plaintiff responded that he submitted 25 grievances to various IDOC officials but received no answers. Plaintiff testified that he filed a grievance with

9

counselor Goforth, but received no response despite 20 or 30 specific requests for action on them.

Defendants have presented evidence that Plaintiff did not file a grievance appealing the decision of a correctional counselor to the Grievance Officer, nor did he properly file any grievances with the ARB. Defendants have also presented evidence that Plaintiff did not file any emergency grievances regarding the assault. Notes taken contemporaneously by correctional counselor Mueller indicate that Plaintiff was provided with grievance forms, presented counselor Mueller with a grievance indicating, among other things, that he was assaulted by staff. Ms. Mueller testified that she answered the grievance and returned it to Plaintiff. The Menard Grievance Officer testified that she received no grievances or emergency grievances from Plaintiff. The ARB received no properly-filed grievances from Plaintiff.

Thus, the Court is faced with significant documentation from Defendants demonstrating Plaintiff did not file grievances in the manner, place, and time, required by the Illinois regulations for Plaintiff to have exhausted his remedies. Defendants further amply demonstrated that procedures are in place at Menard to allow Plaintiff to have done so. Plaintiff on the other hand, presents an unverifiable, internally inconsistent grievance, containing no institutional responses, in addition to his testimony that he received no responses to these and other grievances he filed. His testimony is undermined by the evidence provided by counselor Mueller that Plaintiff complained to her about the January 14, 2009, incident in a grievance, which she answered and returned, but for which Plaintiff sought no further redress from a Grievance Officer. Based on the unreliable dates provided in the grievances and the testimony of the correctional counselor regarding the availability of remedies for redress of grievances at Menard, the Court finds Plaintiff's testimony not credible.

The Court is sympathetic to the difficulty prisoners can experience in seeking to have their grievances heard by prison officials. Moreover, the Court does not doubt that grievances get lost in institutional mail, misfiled, or misplaced. In this case, however, Defendants presented unrebutted evidence that Plaintiff filed a grievance with his correctional counselor, which she returned to him with a response regarding his personal property, and contacts with internal affairs, medical, and mental health staff. At that point, it was the Plaintiff's responsibility to take the next step in the grievance process by filing an appeal to the Grievance Counselor. Defendants presented unrebutted evidence that Plaintiff did not take this next step despite the procedures established for him to do so. Plaintiff testified that he filed numerous grievances, but none were returned. His arguments are supported by two unverified grievances, which the Court finds could have been written at any time. Accordingly, the undersigned recommends that the Court **FIND** that Plaintiff did not exhaust his administrative remedies prior to filing suit as required under the PLRA.

*Unknown Defendant*

One unknown defendant (identified at the 7-3 Shift Sergeant) remains in the action. This defendant has not been named and has not been served. The undersigned recommends that the Court extend the Plaintiff's deadline under rule 4(m) for serving this defendant for 30 days. If after that 30 days the defendant remains unidentified, unnamed, and unserved, the undersigned recommends that he or she be dismissed with prejudice.

CONCLUSION

Based on all the foregoing, it is hereby **RECOMMENDED** that the Court **FIND** that Plaintiff failed to exhaust his administrative remedies, that the Motion for Summary Judgment filed by Defendants Bradley, Dilday, Monroe, and Moore (Doc. 59) be **GRANTED**, that these

Defendants be **DISMISSED** with prejudice, and that the Court adopt the foregoing findings of fact and conclusions of law.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1, the parties shall have fourteen (14) days after the service of this Recommendation to file written objections thereto. The failure to file a timely objection may result in the waiver of the right to challenge these Recommendations before either the District Court or the Court of Appeals. *Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004); *United States v. Hernandez-Rivas*, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED: May 10, 2011**

**DONALD G. WILKERSON**
**United States Magistrate Judge**